IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

DEBORAH PARCELL, individually and as )
Executrix of THE ESTATE OF EDWIN )
POULIN, deceased, and SHENANDOAH )
POULIN, )
)
    Plaintiffs, )
)    CIVIL ACTION FILE
vs. )    NO. _____
)
WALMART, INC. and SHENZHEN )
YUMO COMMERCE AND TRADE )    JURY TRIAL DEMANDED
CORPORATION, )
)
    Defendants. )

## COMPLAINT

COME NOW Deborah Parcell, individually and as the Executrix of the Estate

of Edwin Poulin, and Shenandoah Poulin (collectively "Plaintiffs"), and hereby file

this Complaint against Walmart, Inc. ("Walmart") and Shenzhen Yumo Commerce

and Trade Corporation ("Yumo") (collectively "Defendants"), respectfully stating as

follows:

## INTRODUCTION

1.

Deborah Ford Parcell, 68, and Edwin Duane Poulin, 77, a retired couple, lived

together at 23 Bramblewood Court in Jasper, Georgia.  On October 17, 2023, Ms.

1

Parcell purchased a Marnur Electric Throw Blanket (50" x 60") from Walmart.com for $35.99 to provide warmth and comfort during a cold winter. The blanket, manufactured by Shenzhen Yumo Commerce and Trade Corporation ("Yumo"), was a consumer-grade warming accessory with internal resistive heating wires embedded within soft dual-layer flannel or microfiber fabric. It was designed for use as bedding or a portable throw, featuring six adjustable heating levels (ranging from low settings around 85–95°F to high settings up to 115–120°F).

2.

In the early morning hours of January 16, 2024, just before 6:04 a.m., the Marnur electric heating blanket malfunctioned and ignited a devastating fire. Ms. Parcell was suddenly awakened by flames emanating from the bed skirt on the north side of the bed, near the foot where the heating blanket's controller was located. Upon discovering the fire, Ms. Parcell immediately alerted Mr. Poulin, and together they attempted to extinguish the rapidly spreading flames. However, the fire intensified quickly, and thick smoke began to fill the master bedroom causing poor visibility and toxic fumes.

3.

As conditions deteriorated, both Ms. Parcell and Mr. Poulin exited the room and escaped the house through the front door. Mr. Poulin realized their dogs were

2

still in the bedroom and re-entered to rescue them.  This would be the last time Ms. Parcell saw her partner.  Ms. Parcell sought help, but she was struggling with mobility issues exacerbated by the stress and smoke and her legs gave out halfway to the neighbors' house, forcing her to crawl the remaining distance while in extreme distress.  The neighbors immediately contacted emergency services, with the first 911 call received at 6:04 a.m. reporting a structure fire with possible entrapment.

4.

Pickens County Fire Rescue arrived on scene at 6:09 a.m., finding the home ablaze, with heavy fire emanating from two windows on the front side of the house. Once inside, the firemen's search revealed the floor had collapsed, preventing direct access. The crews broke down the wall from the kitchen/dining area into the bedroom. They located Mr. Poulin, deceased, in the master bedroom, face down on his knees with arms underneath him, between the bathroom and bed—consistent with being overcome by smoke and heat. The state investigator and coroner were notified. Ms. Parcell was transported to Northside Hospital Cherokee for evaluation and treatment of the injuries that she suffered.  Mr. Poulin's body was recovered after fire control.  The official cause of death was determined by the coroner as burns and smoke inhalation – he burned and suffocated alive in the blaze caused by the Yumo electric blanket sold by Walmart.

3

5.

Unbeknownst to Ms. Parcell and Mr. Poulin, the controller for the Marnur electric heating blanket purchased by Ms. Parcell had a defect which made it unreasonably prone to electrical arcing that caused the blanket to ignite into flames. Walmart and Yumo knew or should have known of the defective design of this control device, and did in fact did know of other Chinese-manufactured electric blankets igniting into flames including specifically Yumo blankets substantially similar to the subject blanket. Walmart and Yumo ultimately recalled these other materially identical blankets on June 18, 2025, citing the potential for these blankets to overheat and ignite. This recall was too late to save Ms. Parcell and Mr. Poulin.

**PARTIES**

6.

Plaintiff Deborah Parcell is a citizen of the United States and the State of Georgia.

7.

Plaintiff Deborah Parcell is bringing this action in her individual capacity and in her capacity as the Executrix of the Estate of Edwin Poulin.

8.

Plaintiff Shenandoah Poulin is a Citizen of the United States and the State of

4

Wisconsin.

9.

Plaintiff Shenandoah Pulin is bringing this action in her individual capacity.

10.

Defendant Walmart, Inc. ("Walmart") is a for-profit corporation authorized to transact business in the State of Georgia, incorporated in the State of Delaware and having its principal place of business located in Bentonville, Arkansas.

11.

Service can be made upon Defendant Walmart, Inc. by serving its registered agent, the Corporation Company, at 410 Peachtree Parkway, Suite 4245, Cumming, GA 30041.

12.

Defendant Shenzhen Yumo Commerce and Trade Corporation ("Yumo") is a foreign corporation which transacts business in the State of Georgia, with its principal place of business located in Yueqing City, Zhejiang Province, China.

13.

Service may be made upon Yumo by serving a copy of this Complaint, Translated into Simple Chinese, upon the Chinese Ministry of Justice pursuant to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents

("Hague Convention").

## JURISDICTION AND VENUE

14.

Defendant Walmart, Inc. is subject to the jurisdiction of this Court because it caused tortious injury to the Plaintiffs, including the wrongful death of Edwin Poulin, and allowed such injuries to occur through product liability, negligence, breach of warranty, and other wrongful acts and violations of law. Walmart, Inc. and its employees and/or agents jointly and separately committed a tortious act or omission within the State of Georgia. Walmart, Inc. is engaged in business as a retail merchant. It transacts business within the State of Georgia, and regularly does or solicits business, engages in a persistent course of conduct, and derives substantial revenue from goods used or consumed or services rendered in the State of Georgia.

15.

Defendant Shenzhen Yumo Commerce and Trade Corporation is subject to the jurisdiction of this Court because it caused tortious injury to the Plaintiffs, including the wrongful death of Edwin Poulin, and allowed such injuries to occur through product liability, negligence, and other wrongful acts and violations of law. Yumo and its employees and/or agents jointly and separately committed a tortious act or omission within the State of Georgia. Yumo is engaged in business as a

manufacturer and seller of retail products.  It transacts business within the State of Georgia, and regularly does or solicits business, engages in a persistent course of conduct, and derives substantial revenue from goods used or consumed or services rendered in the State of Georgia.

16.

This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the value of $75,000, exclusive of interests and costs, and it is between citizens of different states and a foreign corporation.

17.

The incident underlying this action occurred in Pickens County, Georgia. Venue is proper as to all defendants under 28 U.S.C. § 1391(b)(2) because the Northern District of Georgia is the judicial district encompassing Pickins County in which a substantial part of the events giving rise to this action occurred, and the Gainesville Division includes Pickins County.

**FACTUAL ALLEGATIONS**

18.

Prior to October 17, 2023, Defendant Yumo designed, manufactured, and offered for sale to United States customers the subject Marnur Electric Throw

Blanket 50" x 60" (hereinafter the "blanket" or "Subject Blanket").

19.

During the time that Defendant Yumo designed, manufactured, and sold the Subject Blanket it was economically and technically feasible to use an alternative design that was less likely to suffer electrical malfunctions which could lead to ignition of the blanket materials.

20.

Defendant Yumo knew, or with the reasonable exercise of due care should have known, that the design of the Subject Blanket was defective and could lead to dangerous overheating and ignition of its blanket while in use.

21.

Upon information and belief, prior to the October 17, 2023, sale of the Subject Blanket to Ms. Parcell, Yumo knew that there were multiple instances of its blankets overheating and/or igniting into flames while in use. Likewise, and upon information and belief, prior to October 17, 2023, Walmart knew that there were numerous electric blankets designed and manufactured in China which overheated and/or ignited into flames while in use, and specifically knew of multiple electric blankets manufactured by Yumo and substantially similar to the Subject Blanket which overheated and/or ignited into flames while in use.  Upon information and belief,

8

some of these incidents caused injury. Upon information and belief, both defendants knew that the blankets overheated and ignited into flames because of a common defect to such products manufactured in China. That defect is described in more detail below.

22.

Yumo has issued recalls for materially identical blankets as the Subject Blanket as a result of the risk of overheating and/or igniting into flames while in use.

23.

Prior to October 17, 2023, Defendant Walmart was the direct importer of the Subject Blanket, and partnered with Defendant Yumo to sell the Subject Blanket to consumers in the United States, including Ms. Parcell.

24.

Defendant Walmart provided both implied and affirmative assurances of the safety of Yumo's product when it was listed for sale of Walmart's website.

25.

Defendant Walmart listed Defendant Yumo as a "Pro Seller" on its website, providing customers such as Ms. Parcell with assurances that Yumo had a "proven track record of creating great shopping experiences for customers."

26.

Ms. Parcell relied on Walmart's implied and express assurances of the quality and safety of the Subject Blanket and of Yumo as a seller when making her decision to purchase the product.

27.

Ms. Parcell and Mr. Poulin exercised ordinary care in the use of the Subject Blanket, and used it for the purpose and use for which it was designed and marketed.

28.

Mr. Poulin's death, and the injuries and damages suffered by Plaintiffs, are the direct and proximate result of the product liability, negligence, breach of warranties, and other wrongful acts of the Defendants.

29.

Neither Ms. Parcell nor Mr. Poulin were in any way at fault for their injuries and Mr. Poulin's death.

30.

Defendants designed, manufactured, distributed, sold, and marketed the Subject Blanket in a defective and unreasonably dangerous condition. The Subject Blanket suffered from defects that caused the blanket to ignite, triggering the catastrophic fire that injured Ms. Parcell and killed Mr. Poulin. Those defects

10

include, but are not limited to, a defective control design that increased the risk of electrical arcing along the wiring at or near the controller for the blanket.

## CAUSES OF ACTION

### I.    Strict Liability (Design Defect and Manufacturing Defect– Yumo)

31.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

32.

At all times referenced herein, Defendant Yumo designed, developed, researched, manufactured, tested, advertised, marketed, promoted, sold, and/or distributed electric warming blankets, including the Subject Blanket, as described in the preceding paragraphs that was sold to, purchased by, and used by Ms. Parcell and Mr. Poulin.

33.

Defendant Yumo had a duty to place into the stream of commerce, design, develop, research, manufacture, test, advertise, market, promote, sell, and/or distribute electric blankets, including the Subject Blanket, so that they were neither defective nor unreasonably dangerous when used.

11

34.

At all times referenced herein, the Marnur electric heating blankets, including the Subject Blanket, were in an unsafe, defective, and/or unreasonably dangerous condition for users such as Ms. Parcell and Mr. Poulin.

35.

At all times of use of the Subject Blanket by Ms. Parcell and Mr. Poulin, the Blanket was being used for the purposes and in a manner intended by and/or foreseeable to Defendant Yumo, including for use as bedding and overnight warmth.

36.

At all times the Subject Blanket (as well as all other Marnur electric blankets) was designed, marketed, distributed, sold and/or left the possession of Defendant Yumo and entered the stream of commerce, it was in a defective and/or unreasonable dangerous condition. These defects include, but are not limited to, the controller of the Marnur electric blanket (including the Subject Blanket) was manufactured with an unreasonably dangerous potential for electrical arcing along conductors, partial mass loss of PCB, and arc spatter.

37.

The defects in the Marnur electric blankets, including the Subject Blanket, are indicative of electrical fault at or near the controller PCB or wiring of the blanket

controller.

38.

The Marnur electric blanket, including the Subject Blanket, failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

39.

The Marnur electric blankets', including the Subject Blanket's, defective design resulted in a blanket, as used by Ms. Parcell and Mr. Poulin, having risks that far exceeded the benefits or utility of that blanket.

40.

The Marnur electric blankets', including the Subject Blanket's, unsafe, defective, and unreasonably dangerous design, manufacture, and condition were the cause of Plaintiffs' injuries, including Mr. Poulin's death.

41.

Plaintiffs' injuries, including Mr. Poulin's death, resulted from use of the Subject Blanket that was both intended and reasonably foreseeable by Defendant Yumo.

42.

At all times of Defendant Yumo's design, development, manufacture,

13

marketing, promotion, distribution, and sale of the Marnur blanket, a feasible and safer alternative design was known, knowable, and available to Defendant Yumo, and a feasible and safer alternative manufacturing process was known, knowable, and available to Defendant Yumo.

43.

At all times of, and subsequent to, Defendant Yumo's design, development, manufacture, marketing, promotion, distribution, and sale of the Marnur electric blanket, including prior to the time of Ms. Parcell's purchase of the Subject Blanket, and prior to the fire in this lawsuit, Defendant Yumo had the ability to eliminate the unsafe condition of, and defects in, the Marnur electric blanket, including the Subject Blanket, without impairing the blanket's utility or usefulness.

44.

Had Defendant Yumo properly and adequately tested the Marnur electric blanket, Defendant Yumo would have discovered its defective and unreasonably dangerous condition when used as intended or in a reasonably foreseeable manner. But Defendant Yumo failed to properly and adequately test the Marnur electric blanket at any time prior to the fire.

45.

The Marnur electric blanket, including the Subject Blanket, was therefore

14

defective in design in that, when designed, developed, manufactured, marketed, promoted, distributed, sold, and used by consumers and others, the foreseeable risk of harm from the product exceeded or outweighed the benefit or utility of the product, and/or the product was unreasonably dangerous to the consumer and others in ways that consumers and users would not expect when used in an intended or reasonably foreseeable manner.

46.

At all times referenced herein, Defendant Yumo knew or should have known that the Marnur electric blanket, including the Subject Blanket, was defectively designed, unreasonably dangerous, and unsafe for use.

47.

Upon information and belief, prior to October 17, 2023, Defendant Yumo was aware of multiple other electric blankets it designed and manufactured, including multiple other substantially similar blankets to the subject blanket, dangerously overheating and/or igniting into fire.  Upon information and belief, some of these incidents caused personal injuries.

48.

Defendant Yumo is therefore strictly liable for Plaintiffs' injuries, including Mr. Poulin's death.

49.

As a direct and proximate result of Ms. Parcell's and Mr. Poulin's use of the Marnur electric blanket, as designed, developed, manufactured, marketed, promoted, distributed, placed into the stream of commerce, and sold by Defendant Yumo, Plaintiffs have suffered serious physical, mental, and emotional injuries, Mr. Poulin's death, harm, damages, and economic loss, and will continue to suffer such injuries, harm, damages, and loss into the future. Plaintiffs are therefore entitled to compensatory and punitive damages in an amount to be determined by the trier of fact.

50.

WHEREFORE, Plaintiffs demand judgment against Defendant Yumo for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all other relief as the Court deems proper.

## II.  Strict Liability (Design Defect and Manufacturing Defect – Walmart)

51.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

52.

At all times referenced herein, Defendant Walmart was the direct importer of

16

the Subject Blanket from China, and as such has the same duties and responsibilities as the manufacturer under 15 USC § 2052 and 16 CFR 1009.3.

53.

Defendant Walmart distributed these and other Chinese made electric warming blankets, including the Subject Blanket, as described in the preceding paragraphs including the one that was sold to, purchased by, and used by Ms. Parcell and Mr. Poulin.

54.

Defendant Walmart had a duty to place into the stream of commerce, design, develop, research, manufacture, test, advertise, market, promote, sell, and/or distribute electric blankets, including the Subject Blanket, so that they were neither defective nor unreasonably dangerous when used.

55.

At all times referenced herein, the Marnur electric heating blankets, including the Subject Blanket, were in an unsafe, defective, and/or unreasonably dangerous condition for users such as Ms. Parcell and Mr. Poulin.

56.

At all times of use of the Subject Blanket by Ms. Parcell and Mr. Poulin, the Blanket was being used for the purposes and in a manner intended by and/or

17

foreseeable to Defendant Walmart, including for use as bedding and overnight warmth.

57.

At all times the Subject Blanket (as well as all other Marnur electric blankets) was designed, marketed, distributed, sold and/or left the possession of Defendant Walmart and entered the stream of commerce, it was in a defective and/or unreasonable dangerous condition. These defects include, but are not limited to, the controller of the Marnur electric blanket (including the Subject Blanket) the potential for electrical arcing along conductors, partial mass loss of PCB, and arc spatter.

58.

The defects in the Marnur electric blankets, including the Subject Blanket, are indicative of electrical fault at or near the controller PCB or wiring of the blanket controller.

59.

The Marnur electric blanket, including the Subject Blanket, failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

60.

The Marnur electric blankets', including the Subject Blanket's, defective

design resulted in a blanket, as used by Ms. Parcell and Mr. Poulin, having risks that far exceeded the benefits or utility of that blanket.

61.

The Marnur electric blankets', including the Subject Blanket's, unsafe, defective, and unreasonably dangerous design and condition were the cause of Plaintiffs' injuries, including Mr. Poulin's death.

62.

Plaintiffs' injuries, including Mr. Poulin's death, resulted from use of the Subject Blanket that was both intended and reasonably foreseeable by Defendant Walmart.

63.

At all times of Defendant Walmart's design, development, manufacture, marketing, promotion, distribution, and sale of the Marnur blanket, a feasible and safer alternative design was known, knowable, and available to Defendant Walmart who sold other electric blankets that did not overheat and/or ignite into flames.

64.

At all times of, and subsequent to, Defendant Walmart's design, development, manufacture, marketing, promotion, distribution, and sale of the Marnur electric blanket, including prior to the time of Ms. Parcell's purchase of the Subject Blanket,

19

and prior to the fire in this lawsuit, Defendant Walmart had the ability to eliminate the unsafe condition of, and defects in, the Marnur electric blanket, including the Subject Blanket, without impairing the blanket's utility or usefulness.

65.

Had Defendant Walmart properly and adequately tested the Marnur electric blanket, Defendant Walmart would have discovered its defective and unreasonably dangerous condition when used as intended or in a reasonably foreseeable manner. But Defendant Walmart failed to properly and adequately test the Marnur electric blanket at any time prior to the fire.

66.

The Marnur electric blanket, including the Subject Blanket, was therefore defective in design in that, when designed, developed, manufactured, marketed, promoted, distributed, sold, and used by consumers and others, the foreseeable risk of harm from the product exceeded or outweighed the benefit or utility of the product, and/or the product was unreasonably dangerous to the consumer and others in ways that consumers and users would not expect when used in an intended or reasonably foreseeable manner.

67.

At all times referenced herein, Defendant Walmart knew or should have

20

known that the Marnur electric blanket, including the Subject Blanket, was defectively designed, unreasonably dangerous, and unsafe for use.

68.

Upon information and belief, prior to October 17, 2023, Defendant Walmart was aware of multiple other electric blankets designed and manufactured in China, including multiple other substantially similar blankets to the subject blanket designed and manufactured by Yumo, dangerously overheating and/or igniting into fire.  Upon information and belief, some of these incidents caused personal injuries.

69.

Defendant Walmart is therefore strictly liable for Plaintiffs' injuries, including Mr. Poulin's death.

70.

As a direct and proximate result of Ms. Parcell's and Mr. Poulin's use of the Marnur electric blanket, as designed, developed, manufactured, marketed, promoted, distributed, placed into the stream of commerce, and sold by Defendant Walmart, Plaintiffs have suffered serious physical, mental, and emotional injuries, Mr. Poulin's death, harm, damages, and economic loss, and will continue to suffer such injuries, harm, damages, and loss into the future.  Plaintiffs are therefore entitled to compensatory and punitive damages in an amount to be determined by

21

the trier of fact.

71.

WHEREFORE, Plaintiffs demand judgment against Defendant Walmart for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all other relief as the Court deems proper.

## III. Strict Liability (Failure to Warn, Failure to Adequately Communicate Warnings, and Post-Sale Failure to Warn – Walmart)

72.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

73.

At all times relevant herein, Defendant Walmart was engaged in the design, development, manufacturing, marketing, promotion, distribution, and sale of the Marnur electric blanket.

74.

Defendant Walmart designed, developed, manufactured, marketed, promoted, distributed, and sold the Marnur electric blanket to consumers knowing that the blankets would be used for multiple purposes, including as both "throw" blankets and for overnight use as bedding. Indeed, Defendant Walmart marketed, promoted, and advertised the Marnur electric blanket to the public to

22

be used for exactly these purposes.

75.

Upon information and belief, prior to October 17, 2023, Defendant Walmart was aware of multiple other electric blankets designed and manufactured in China, including multiple other substantially similar blankets to the subject blanket designed and manufactured by Yumo, dangerously overheating and/or igniting into fire. Upon information and belief, some of these incidents caused personal injuries.

76.

Marnur electric blankets, including the Subject Blanket, placed into the stream of commerce by Defendant Walmart were defective and unreasonably dangerous due to inadequate warnings because Defendant Walmart knew or should have known that, among other defects, the Marnur blanket is susceptible to overheating and electrical arcing which can lead to fires when used in an intended or reasonably foreseeable manner, and therefore poses an unreasonable risk of serious physical injury, pain and suffering, debilitation, and death, but Defendant Walmart failed to give consumers, and users adequate -- or any – warning of such risks.

77.

Defendant Walmart had a duty to warn its consumers, purchasers, users,

23

and the public, including specifically Plaintiffs, about the Marnur electric blanket's risks and defects, both before and after sale, but Defendant Walmart breached its duty in that they failed to provide adequate warnings regarding its defective and unreasonably dangerous product, including but not limited to the aforementioned defects, and its potential risks, including the risk of ignition and fire when used in an intended or reasonably foreseeable manner.

78.

Examples of Defendant Walmart's failures to warn about the blanket's defective and unreasonably dangerous condition include, but are not limited to, the following:

   a) Failing to warn consumers of the potential of failure of the electrical components of the Marnur electric blanket, which can lead to electrical arcing, arc spatter, and ignition of the materials from which the blanket is constructed;

   b) Failing to warn that the Marnur electric blanket's controller design makes the blanket prone to ignition during the course of ordinary and intended use;

   c) Failing to warn that Defendant Walmart could eliminate the aforementioned defects by using feasible and safer alternative designs

24

but that Defendant Walmart has refused to do so; and

d) Failing to recall promptly Marnur electric blankets (as well as other Yumo electric blankets) out in the market despite numerous instances of overheating, fires, and injuries as a result of its product.

79.

Defendant Walmart's failures to warn about the Marnur electric blanket's risks and defects, including the aforementioned defects, occurred through the failure to provide adequate warnings in the on-product labeling (e.g., warnings on the Marnur electric blanket), and/or in the Owner's Manual, and/or in communications or statements made to users and consumers, and/or in communications – including but not limited to marketing, promotion, or advertisements – made to the public. Moreover, these failures to warn occurred through affirmative statements, misleading and/or incomplete statements, and/or omissions.

80.

Had Defendant Walmart provided adequate and sufficient warnings regarding the defective and unreasonably dangerous condition of the Marnur electric blanket, including the Subject Blanket, including the aforementioned defects, Plaintiff Deborah Parcell would not have purchased the Subject Blanket

and/or used it in its defective condition and would have avoided Plaintiffs' injuries, including Mr. Poulin's death.

81.

In addition, Defendant Walmart failed to warn in that it failed to adequately communicate warnings and information about risks of the Marnur electric blanket, including the Subject Blanket, to Plaintiffs and other consumers, users, and the public.  These failures include, but are not limited to, failing to communicate warnings and information about defects and risks of the Marnur electric blanket, via correspondence, bulletins, public statements, recalls, or other similar means, to Plaintiffs, other known or knowable owners, purchasers, consumers, users, and the public.

82.

Had Defendant Walmart provided adequate and sufficient warnings regarding the defective and unreasonably dangerous condition of the Marnur electric blanket, including the Subject Blanket, including the aforementioned defects, after the time of sale, Plaintiffs would not have used it in its defective condition and would have avoided their injuries, including Mr. Parcell's death.

83.

Defendant Walmart is strictly liable to Plaintiffs for its failures to warn, and

26

these failures proximately caused Plaintiffs' injuries.   As a direct and proximate result of Defendant Walmart's failures to warn as set forth herein, Plaintiffs have suffered serious physical, mental, and emotional injuries, Mr. Poulin's death, harm, damages, and economic loss, and will continue to suffer such injuries, harm, damages, and loss into the future.  Plaintiffs are therefore entitled to compensatory and punitive damages in an amount to be determined by the trier of fact.

84.

WHEREFORE, Plaintiffs demand judgment against Defendant Walmart for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## IV.    Strict Liability (Failure to Warn, Failure to Adequately Communicate Warnings, and Post-Sale Failure to Warn – Yumo)

85.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

86.

At all times relevant herein, Defendant Yumo was engaged in the design, development, manufacturing, marketing, promotion, distribution, and sale of the Marnur electric blanket.

27

87.

Defendant Yumo designed, developed, manufactured, marketed, promoted, distributed, and sold the Marnur electric blanket to consumers knowing that the blankets would be used for multiple purposes, including as both "throw" blankets and for overnight use as bedding. Indeed, Defendant Yumo marketed, promoted, and advertised the Marnur electric blanket to the public to be used for exactly these purposes.

88.

Marnur electric blankets, including the Subject Blanket, placed into the stream of commerce by Defendant Yumo were defective and unreasonably dangerous due to inadequate warnings because Defendant Yumo knew or should have known that, among other defects, the Marnur blanket is susceptible to overheating and electrical arcing which can lead to fires when used in an intended or reasonably foreseeable manner, and therefore poses an unreasonable risk of serious physical injury, pain and suffering, debilitation, and death, but Defendant Yumo failed to give consumers, and users adequate -- or any – warning of such risks.

89.

Defendant Yumo had a duty to warn its consumers, purchasers, users, and

the public, including specifically Plaintiffs, about the Marnur electric blanket's risks and defects, both before and after sale, but Defendant Yumo breached its duty in that they failed to provide adequate warnings regarding its defective and unreasonably dangerous product, including but not limited to the aforementioned defects, and its potential risks, including the risk of ignition and fire when used in an intended or reasonably foreseeable manner.

90.

Examples of Defendant Yumo's failures to warn about the blanket's defective and unreasonably dangerous condition include, but are not limited to, the following:

e) Failing to warn consumers of the potential of failure of the electrical components of the Marnur electric blanket, which can lead to electrical arcing, arc spatter, and ignition of the materials from which the blanket is constructed;

f) Failing to warn that the Marnur electric blanket's controller design makes the blanket prone to ignition during the course of ordinary and intended use;

g) Failing to warn that Defendant Yumo could eliminate the aforementioned defects by using feasible and safer alternative designs

29

but that Defendant Yumo has refused to do so; and

h) Failing to recall promptly Marnur electric blankets (as well as other Yumo electric blankets) out in the market despite numerous instances of overheating, fires, and injuries as a result of its product.

91.

Upon information and belief, prior to October 17, 2023, Defendant Yumo was aware of multiple other electric blankets, including multiple other substantially similar blankets to the subject blanket designed and manufactured by Yumo, dangerously overheating and/or igniting into fire. Upon information and belief, some of these incidents caused personal injuries.

92.

Defendant Yumo's failures to warn about the Marnur electric blanket's risks and defects, including the aforementioned defects, occurred through the failure to provide adequate warnings in the on-product labeling (e.g., warnings on the Marnur electric blanket), and/or in the Owner's Manual, and/or in communications or statements made to users and consumers, and/or in communications – including but not limited to marketing, promotion, or advertisements – made to the public. Moreover, these failures to warn occurred through affirmative statements, misleading and/or incomplete statements, and/or

30

omissions.

93.

Had Defendant Yumo provided adequate and sufficient warnings regarding the defective and unreasonably dangerous condition of the Marnur electric blanket, including the Subject Blanket, including the aforementioned defects, Plaintiff Deborah Parcell would not have purchased the Subject Blanket and/or used it in its defective condition and would have avoided Plaintiffs' injuries, including Mr. Poulin's death.

94.

In addition, Defendant Yumo failed to warn in that it failed to adequately communicate warnings and information about risks of the Marnur electric blanket, including the Subject Blanket, to Plaintiffs and other consumers, users, and the public. These failures include, but are not limited to, failing to communicate warnings and information about defects and risks of the Marnur electric blanket, via correspondence, bulletins, public statements, recalls, or other similar means, to Plaintiffs, other known or knowable owners, purchasers, consumers, users, and the public.

95.

Had Defendant Yumo provided adequate and sufficient warnings regarding

31

the defective and unreasonably dangerous condition of the Marnur electric blanket, including the Subject Blanket, including the aforementioned defects, after the time of sale, Plaintiffs would not have used it in its defective condition and would have avoided their injuries, including Mr. Parcell's death.

96.

Defendant Yumo is strictly liable to Plaintiffs for its failures to warn, and these failures proximately caused Plaintiffs' injuries.  As a direct and proximate result of Defendant Yumo's failures to warn as set forth herein, Plaintiffs have suffered serious physical, mental, and emotional injuries, Mr. Poulin's death, harm, damages, and economic loss, and will continue to suffer such injuries, harm, damages, and loss into the future.  Plaintiffs are therefore entitled to compensatory and punitive damages in an amount to be determined by the trier of fact.

97.

WHEREFORE, Plaintiffs demand judgment against Defendant Yumo for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## V.    Negligence – Walmart

98.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every

32

allegation set forth in the preceding paragraphs.

99.

Defendant Walmart had a duty to exercise reasonable care in the design, development, testing, manufacture, quality assurance, quality control, labeling, warning, marketing, promotion, advertising, distribution, and sale of the Marnur electric blanket, including the Subject Blanket, including a duty to ensure that the blanket was not defective, unreasonably dangerous, or posed an increased risk of harm or death.

100.

Defendant Walmart failed to exercise reasonable care, and was negligent, in the design, development, testing, manufacture, quality assurance, quality control, labeling, warning, marketing, promotion, advertising, distribution, and sale of the Marnur electric blanket, including the Subject Blanket, in that Defendant Walmart knew or should have known – prior to release into the stream of commerce, prior to sale to and purchase by Deborah Parcell on October 17, 2023, and/or prior to January 2024 – that the blanket was defective, unreasonably dangerous, or posed an increased risk of harm or death, and was not reasonably safe for use by consumers and users.

33

101.

Upon information and belief, prior to October 17, 2023, Defendant Walmart was aware of multiple other electric blankets designed and manufactured in China, including multiple other substantially similar blankets to the subject blanket designed and manufactured by Yumo, dangerously overheating and/or igniting into fire. Upon information and belief, some of these incidents caused personal injuries. Walmart knew or should have known that these incidents were caused by a common defect in the design and manufacture of such blankets, causing electrical arcing along conductors, partial mass loss of PCB, and arc spatter when used in an intended or reasonably foreseeable manner.

102.

The negligence of Defendant Walmart, its agents, servants, affiliates, and/or employees, includes, but is not limited to, the following acts and/or omissions:

a) Negligently designing and/or manufacturing the controller of Marnur electric blankets (including the Subject Blanket) such that it had the potential for electrical arcing along conductors, partial mass loss of PCB, and arc spatter when used in an intended or reasonably foreseeable manner;

b) Negligently failing to utilize adequate testing protocols and parameters

34

for, and not conducting adequate, sufficient, or thorough testing of, Marnur electric blankets, including the Subject Blanket, in all scenarios that users are reasonably likely to encounter out in the market;

c) Negligently marketing, promoting, advertising, placing into the stream of commerce, distributing, and selling the Marnur electric blanket, including the Subject Blanket, without testing the blanket to determine its dangers when used in an intended or reasonably foreseeable manner;

d) Negligently failing to conduct post-marketing surveillance, or using any means or efforts to monitor the market, to affirmatively look for safety issues or dangers in the product as used in the market, which if such efforts were made, would allow Defendant Walmart to identify and remedy dangers in the blanket, including through warnings, consumer bulletins, recalls, redesigns, and other means;

e) Negligently failing to remedy and fix the defective condition of the Subject Blanket, as well as other Marnur electric blankets out in the market, prior to January 2024, through means including, but not limited to, warnings, consumer bulletins, recalls, or redesigns;

f) Negligently failing to recall the defective and unreasonably dangerous Marnur electric blankets, including the Subject Blanket, at the earliest

35

date it became known or knowable that such blankets were, in fact, defective and dangerous.

g) Negligently failing to adequately and properly warn Plaintiffs, consumers, users, and the public of the dangers and defective condition of the Marnur electric blanket, including but not limited to:

   i) Failing to warn consumers of the potential of failure of the electrical components of the Marnur electric blanket, which can lead to electrical arcing, arc spatter, and ignition of the materials from which the blanket is constructed;

   ii) Failing to warn that the Marnur electric blanket's controller design makes the blanket prone to ignition during the course of ordinary and intended use;

   iii) Failing to warn that Defendant Walmart could eliminate the aforementioned defects by using feasible and safer alternative designs but that Defendant Walmart has refused to do so; and

   iv) Failing to recall promptly Marnur electric blankets (as well as other Yumo electric blankets) out in the market despite knowledge of numerous instances of overheating, fires, and injuries as a result of this product and similar products.

36

h) Failing to adequately communicate warnings and information about risks of the Marnur electric blanket, including the Subject Blanket, to Plaintiffs and other consumers, users, and the public. These failures include, but are not limited to, failing to communicate warnings and information about defects and risks of the Marnur electric blanket, via correspondence, bulletins, public statements, recalls, or other similar means, to Plaintiffs, other known or knowable owners, purchasers, consumers, users, and the public.

i) Negligently failing to include adequate and proper warnings or instructions about the Marnur electric blanket's dangers and defects in the Owner's Manual, on-product labeling, in customer bulletins, and/or through other means and communications;

j) Falsely giving Plaintiffs, consumers, and users the impression, through public statements, advertisements, marketing, website content, and other means, that the Marnur electric blanket is reasonably safe, merchantable, and fit for normal, expected, or foreseeable uses, despite the fact that Defendant Walmart knew or should have known that the Marnur electric blanket is defective and unreasonably dangerous;

k) Was careless and/or negligent in various other ways, as will be illustrated

37

in discovery.

103.

Despite the fact that Defendant Walmart knew or should have known that the Marnur electric blanket was defective, unreasonably dangerous, and posed significant risk to users, Defendant Walmart continued making, promoting, placing into the stream of commerce, distributing, and selling the Marnur electric blanket.

104.

Defendant Walmart knew or should have known that consumers such as Plaintiffs, as well as other users, would suffer injury and/or death, and/or be at increased risk of injury and/or death, as a result of Defendant Walmart's failure to exercise ordinary care, as set forth above.

105.

Defendant Walmart, in marketing, promoting, advertising, labeling, creating the Owner's Manual for, placing into the stream of commerce, distributing, and selling the Marnur electric blanket, negligently misrepresented and/or omitted material facts regarding the Marnur electric blanket's safety and fitness for ordinary use, when the Marnur electric blanket was not safe or fit for use but dangerous and defective.

38

106.

Defendant Walmart's negligence was the proximate cause of Plaintiffs' injuries, including Mr. Poulin's death.

107.

As a direct and proximate result of Defendant Walmart's negligence, including negligent design, negligent testing, negligent marketing and advertising, negligent failure to warn, negligent failure to recall or remedy, negligent market surveillance, and negligent misrepresentations, Plaintiffs have suffered serious physical, mental, and emotional injuries, Mr. Poulin's death, harm, damages, and economic loss, and will continue to suffer such injuries, harm, damages, and loss into the future. Plaintiffs are therefore entitled to compensatory and punitive damages in an amount to be determined by the trier of fact.

108.

WHEREFORE, Plaintiffs demand judgment against Defendant Walmart for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## VI.   Negligence – Yumo

109.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every

allegation set forth in the preceding paragraphs.

110.

Defendant Yumo had a duty to exercise reasonable care in the design, development, testing, manufacture, quality assurance, quality control, labeling, warning, marketing, promotion, advertising, distribution, and sale of the Marnur electric blanket, including the Subject Blanket, including a duty to ensure that the blanket was not defective, unreasonably dangerous, or posed an increased risk of harm or death.

111.

Defendant Yumo failed to exercise reasonable care, and were negligent, in the design, development, testing, manufacture, quality assurance, quality control, labeling, warning, marketing, promotion, advertising, distribution, and sale of the Marnur electric blanket, including the Subject Blanket, in that Defendant Yumo knew or should have known – prior to release into the stream of commerce, prior to purchase by Deborah Parcell, and/or prior to January 2024 – that the blanket was defective, unreasonably dangerous, or posed an increased risk of harm or death, and was not reasonably safe for use by consumers and users.

112.

The negligence of Defendant Yumo, its agents, servants, affiliates, and/or

employees, includes, but is not limited to, the following acts and/or omissions:

l) Negligently designing and/or manufacturing the controller of Marnur electric blankets (including the Subject Blanket) such that it had the potential for electrical arcing along conductors, partial mass loss of PCB, and arc spatter when used in an intended or reasonably foreseeable manner;

m) Negligently failing to utilize adequate testing protocols and parameters for, and not conducting adequate, sufficient, or thorough testing of, Marnur electric blankets, including the Subject Blanket, in all scenarios that users are reasonably likely to encounter out in the market;

n) Negligently marketing, promoting, advertising, placing into the stream of commerce, distributing, and selling the Marnur electric blanket, including the Subject Blanket, without testing the blanket to determine its dangers when used in an intended or reasonably foreseeable manner;

o) Negligently failing to conduct post-marketing surveillance, or using any means or efforts to monitor the market, to affirmatively look for safety issues or dangers in the product as used in the market, which if such efforts were made, would allow Defendant Yumo to identify and remedy dangers in the blanket, including through warnings, consumer bulletins,

41

recalls, redesigns, and other means;

p) Negligently failing to remedy and fix the defective condition of the Subject Blanket, as well as other Marnur electric blankets out in the market, prior to January 2024, through means including, but not limited to, warnings, consumer bulletins, recalls, or redesigns;

q) Negligently failing to recall the defective and unreasonably dangerous Marnur electric blankets, including the Subject Blanket, at the earliest date it became known or knowable that the blanket was, in fact, defective and dangerous.

r) Negligently failing to adequately and properly warn Plaintiffs, consumers, users, and the public of the dangers and defective condition of the Marnur electric blanket, including but not limited to:

v) Failing to warn consumers of the potential of failure of the electrical components of the Marnur electric blanket, which can lead to electrical arcing, arc spatter, and ignition of the materials from which the blanket is constructed;

vi) Failing to warn that the Marnur electric blanket's controller design makes the blanket prone to ignition during the course of ordinary and intended use;

42

vii)    Failing to warn that Defendant Yumo could eliminate the aforementioned defects by using feasible and safer alternative designs but that Defendant Yumo has refused to do so; and

viii)   Failing to recall promptly Marnur electric blankets (as well as other Yumo electric blankets) out in the market despite numerous instances of overheating, fires, and injuries as a result of its product.

s) Failing to adequately communicate warnings and information about risks of the Marnur electric blanket, including the Subject Blanket, to Plaintiffs and other consumers, users, and the public.  These failures include, but are not limited to, failing to communicate warnings and information about defects and risks of the Marnur electric blanket, via correspondence, bulletins, public statements, recalls, or other similar means, to Plaintiffs, other known or knowable owners, purchasers, consumers, users, and the public.

t) Negligently failing to include adequate and proper warnings or instructions about the Marnur electric blanket's dangers and defects in the Owner's Manual, on-product labeling, in customer bulletins, and/or through other means and communications;

43

u) Falsely giving Plaintiffs, consumers, and users the impression, through public statements, advertisements, marketing, website content, and other means, that the Marnur electric blanket is reasonably safe, merchantable, and fit for normal, expected, or foreseeable uses, despite the fact that Defendant Yumo knew or should have known that the Marnur electric blanket is defective and unreasonably dangerous;

v) Was careless and/or negligent in various other ways, as will be illustrated in discovery.

113.

Despite the fact that Defendant Yumo knew or should have known that the Marnur electric blanket was defective, unreasonably dangerous, and posed significant risk to users, Defendant Yumo continued making, promoting, placing into the stream of commerce, distributing, and selling the Marnur electric blanket.

114.

Defendant Yumo knew or should have known that consumers such as Plaintiffs, as well as other users, would suffer injury and/or death, and/or be at increased risk of injury and/or death, as a result of Defendant Yumo's failure to exercise ordinary care, as set forth above.

44

115.

Defendant Yumo, in marketing, promoting, advertising, labeling, creating the Owner's Manual for, placing into the stream of commerce, distributing, and selling the Marnur electric blanket, negligently misrepresented and/or omitted material facts regarding the Marnur electric blanket's safety and fitness for ordinary use, when the Marnur electric blanket was not safe or fit for use but dangerous and defective.

116.

Defendant Yumo's negligence was the proximate cause of Plaintiffs' injuries, including Mr. Poulin's death.

117.

As a direct and proximate result of Defendant Yumo's negligence, including negligent design, negligent testing, negligent marketing and advertising, negligent failure to warn, negligent failure to recall or remedy, negligent market surveillance, and negligent misrepresentations, Plaintiffs have suffered serious physical, mental, and emotional injuries, Mr. Poulin's death, harm, damages, and economic loss, and will continue to suffer such injuries, harm, damages, and loss into the future. Plaintiffs are therefore entitled to compensatory and punitive damages in an amount to be determined by the trier of fact.

118.

WHEREFORE, Plaintiffs demand judgment against Defendant Yumo for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## VII. Intentional Infliction of Emotional Distress – Deborah Parcell and Shenandoah Poulin – Walmart

119.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

120.

Defendant Walmart had a duty to exercise reasonable care in the design, marketing, distribution, and sale of the Subject Blanket.

121.

Defendant Walmart was guilty of the aforementioned design defects, failure to warn, and negligence set out in the previous paragraphs of this complaint.

122.

As a direct and proximate result of one or more of these wrongful acts, Defendant Walmart placed Plaintiff Deborah Parcell in a position to experience her partner, Edwin Poulin's death.

123.

As a direct and proximate result of one or more of these wrongful acts, Defendant Walmart placed Plaintiff Shenandoah Poulin in a position to experience her father, Edwin Poulin's death.

124.

As a direct and proximate result of one or more of these wrongful acts, Defendant Walmart placed Plaintiff Deborah Parcell in the zone of physical danger, caused her to fear for her own safety in which physical harm was imminent, and caused her to suffer great pain and anguish, and she will continue to so suffer in the future.

125.

As a direct and proximate result of one or more of these wrongful acts, Defendant Walmart caused Plaintiff Deborah Parcell physical harm, and consequently caused her to suffer great pain and anguish, and she will continue to so suffer in the future.

126.

As a direct and proximate result of one or more of these wrongful acts, Defendant Walmart caused Plaintiff Shenandoah Poulin to suffer great emotional anguish at the loss of her father, and she will continue to so suffer in the future.

47

127.

WHEREFORE, Plaintiffs demand judgment against Defendant Walmart for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## VIII.  Intentional Infliction of Emotional Distress – Deborah Parcell and Shenandoah Poulin – Yumo

128.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

129.

Defendant Yumo had a duty to exercise reasonable care in the design, marketing, distribution, and sale of the Subject Blanket.

130.

Defendant Yumo was guilty of the aforementioned design defects, failure to warn, and negligence set out in the previous paragraphs of this complaint.

131.

As a direct and proximate result of one or more of these wrongful acts, Defendant Yumo placed Plaintiff Deborah Parcell in a position to experience her partner, Edwin Poulin's death.

48

132.

As a direct and proximate result of one or more of these wrongful acts, Defendant Yumo placed Plaintiff Shenandoah Poulin in a position to experience her father, Edwin Poulin's death.

133.

As a direct and proximate result of one or more of these wrongful acts, Defendant Yumo placed Plaintiff Deborah Parcell in the zone of physical danger, caused her to fear for her own safety in which physical harm was imminent, and caused her to suffer great pain and anguish, and she will continue to so suffer in the future.

134.

As a direct and proximate result of one or more of these wrongful acts, Defendant Yumo caused Plaintiff Deborah Parcell physical harm, and consequently caused her to suffer great pain and anguish, and she will continue to so suffer in the future.

135.

As a direct and proximate result of one or more of these wrongful acts, Defendant Yumo caused Plaintiff Shenandoah Poulin to suffer great emotional anguish at the loss of her father, and she will continue to so suffer in the future.

49

136.

WHEREFORE, Plaintiffs demand judgment against Defendant Yumo for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## IX. Negligent Infliction of Emotional Distress – Deborah Parcell and Shenandoah Poulin – Walmart

137.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

138.

Defendant Walmart had a duty to exercise reasonable care in the design, marketing, distribution, and sale of the Subject Blanket.

139.

Defendant Walmart was guilty of the aforementioned design defects, failure to warn, and negligence set out in the previous paragraphs of this complaint.

140.

As a direct and proximate result of one or more of these wrongful acts, Defendant Walmart placed Plaintiff Deborah Parcell in a position to experience her partner, Edwin Poulin's death.

141.

As a direct and proximate result of one or more of these wrongful acts, Defendant Walmart placed Plaintiff Shenandoah Poulin in a position to experience her father, Edwin Poulin's death.

142.

As a direct and proximate result of one or more of these wrongful acts, Defendant Walmart caused Plaintiff Deborah Parcell physical harm, and consequently caused her to suffer great pain and anguish, and she will continue to suffer in the future.

143.

As a direct and proximate result of one or more of these wrongful acts, Defendant Walmart caused Plaintiff Shenandoah Poulin to suffer great emotional anguish at the loss of her father, and she will continue to so suffer in the future

144.

WHEREFORE, Plaintiffs demand judgment against Defendant Walmart for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

X.    **Negligent Infliction of Emotional Distress – Deborah Parcell and Shenandoah Poulin – Yumo**

51

145.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

146.

Defendant Yumo had a duty to exercise reasonable care in the design, marketing, distribution, and sale of the Subject Blanket.

147.

Defendant Yumo was guilty of the aforementioned design defects, failure to warn, and negligence set out in the previous paragraphs of this complaint.

148.

As a direct and proximate result of one or more of these wrongful acts, Defendant Yumo placed Plaintiff Deborah Parcell in a position to experience her partner, Edwin Poulin's death.

149.

As a direct and proximate result of one or more of these wrongful acts, Defendant Yumo placed Plaintiff Shenandoah Poulin in a position to experience her father, Edwin Poulin's death.

150.

As a direct and proximate result of one or more of these wrongful acts,

Defendant Yumo caused Plaintiff Deborah Parcell physical harm, and consequently caused her to suffer great pain and anguish, and she will continue to suffer in the future.

### 151.

As a direct and proximate result of one or more of these wrongful acts, Defendant Yumo caused Plaintiff Shenandoah Poulin to suffer great emotional anguish at the loss of her father, and she will continue to so suffer in the future

### 152.

WHEREFORE, Plaintiffs demand judgment against Defendant Yumo for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## XI.    Breach of Express Warranty (O.C.G.A. § 11-2-313)

### 153.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

### 154.

Defendant Walmart expressly warranted that Marnur electric blanket, including the Subject Blanket, was reasonably safe, merchantable, free from defects, good quality, and fit for intended or foreseeable uses.

155.

At the time Defendant Walmart designed, manufactured, marketed, promoted, advertised, and sold the Marnur electric blanket, including the Subject Blanket, it knew and intended the blanket would be used in the manner and for the purposes as used by Plaintiffs, including on the date of the fire. Moreover, Plaintiffs were foreseeable users of the blanket.

156.

The express warranties represented by Defendant Walmart were a part of the basis for Plaintiffs' purchase of and use of the Subject Blanket, and Plaintiffs relied on these warranties in deciding to purchase and use the blanket, including on the date of the fire.  Plaintiffs relied on Defendant Walmart's express warranties.

157.

At the time of making the express warranties, Defendant Walmart had knowledge of the uses and purposes for which the Subject Blanket would be used, and warrantied the product to be reasonably safe, merchantable, free from defects, good quality, and fit for intended or foreseeable uses.

158.

The Marnur electric blanket, including the Subject Blanket, did not conform to these express warranties as demonstrated by the unreasonable danger and

defectiveness of the blanket, including in that it manifested electrical defects and ignited through no fault of Plaintiffs but because of the faulty design of the blanket, including but not limited to the electrical design of the controller.  When being used as intended and foreseen by Defendant Walmart, Plaintiffs' foreseeable use the Subject Blanket as bedding to provide overnight warmth caused the wiring to arc and the blanket materials to ignite which led to the January 2024 fire, contrary to Defendant Walmart's warranties.

159.

As a direct and proximate result of Defendant Walmart's breach of express warranty, Plaintiffs have suffered serious physical, mental, and emotional injuries, Mr. Poulin's death, harm, damages, and economic loss, and will continue to suffer such injuries, harm, damages, and loss into the future.  Plaintiffs are therefore entitled to compensatory and punitive damages in an amount to be determined by the trier of fact.

160.

WHEREFORE, Plaintiffs demand judgment against Defendant Walmart for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## XII.   Breach of Implied Warranties of Merchantability (O.C.G.A. § 11-2-314)

161.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

162.

At the time Defendant Walmart designed, manufactured, marketed, promoted, advertised, placed into the stream of commerce, distributed, and sold the Marnur electric blanket, including the Subject Blanket, for use by Plaintiffs, Defendant Walmart knew and intended the blanket would be used in the manner and for the purposes as used by Plaintiffs, including on the day and at the time of the fire, and impliedly warranted that the blanket was reasonably safe, merchantable, free from defects, good quality, and fit for the intended or foreseeable uses.

163.

The Marnur electric blanket, including the Subject Blanket, was not of merchantable quality and was not fit for the ordinary and/or particular purpose for which it was intended, because, among other defects, the blanket's controller was designed or manufactured in such a way as to be prone to electrical arcing and ignition of the blanket materials.

56

164.

Plaintiffs reasonably relied upon the skill, judgment, expertise, and superior knowledge of Defendant Walmart as to whether the Marnur electric blanket, including the Subject Blanket, was of merchantable quality and/or reasonably safe for its intended and/or particular purpose or use, and upon Defendant Walmart's implied warranties as to these issues.

165.

Contrary to these implied warranties, the Marnur electric blanket, including the Subject Blanket, was not of merchantable quality, free from defects, reasonably safe, or fit for its intended and/or particular use or purpose, because the blanket was dangerous and defective, and ignited when used as intended or as foreseeable to Defendant Walmart.

166.

As a direct and proximate result of Defendant Walmart's breach of implied warranties, Plaintiffs have suffered serious physical, mental, and emotional injuries, Mr. Poulin's death, harm, damages, and economic loss, and will continue to suffer such injuries, harm, damages, and loss into the future.  Plaintiffs are therefore entitled to compensatory and punitive damages in an amount to be determined by the trier of fact.

167.

WHEREFORE, Plaintiffs demand judgment against Defendant Walmart for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## XIII.    Breach of Implied Warranties of Fitness for a Particular Purpose (O.C.G.A. § 11-2-315)

168.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

169.

At the time Defendant Walmart designed, manufactured, marketed, promoted, advertised, placed into the stream of commerce, distributed, and sold the Marnur electric blanket, including the Subject Blanket, for use by Plaintiffs, Defendant Walmart knew and intended the blanket would be used in the manner and for the purposes as used by Plaintiffs, including on the day and at the time of the fire, and impliedly warranted that the blanket was reasonably safe, free from defects, good quality, and fit for the intended or foreseeable uses.

170.

The Marnur electric blanket, including the Subject Blanket, was not fit for the ordinary and/or particular purpose for which it was intended, because, among other

defects, the blanket's controller was designed or manufactured in such a way as to be prone to electrical arcing and ignition of the blanket materials.

171.

Plaintiffs reasonably relied upon the skill, judgment, expertise, and superior knowledge of Defendant Walmart as to whether the Marnur electric blanket, including the Subject Blanket, was reasonably safe for its intended and/or particular purpose or use, and upon Defendant Walmart's implied warranties as to these issues.

172.

Contrary to these implied warranties, the Marnur electric blanket, including the Subject Blanket, was not free from defects, reasonably safe, or fit for its intended and/or particular use or purpose, because the blanket was dangerous and defective, and ignited when used as intended or as foreseeable to Defendant Walmart.

173.

As a direct and proximate result of Defendant Walmart's breach of implied warranties, Plaintiffs have suffered serious physical, mental, and emotional injuries, Mr. Poulin's death, harm, damages, and economic loss, and will continue to suffer such injuries, harm, damages, and loss into the future. Plaintiffs are therefore entitled to compensatory and punitive damages in an amount to be determined by the trier of fact.

174.

WHEREFORE, Plaintiffs demand judgment against Defendant Walmart for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## XIV.    Punitive Damages - Walmart

175.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

176.

Plaintiffs are entitled to recover punitive damages from Defendant Walmart because the actions of Defendant Walmart and its agents and employees showed willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences. Accordingly, Plaintiffs are entitled to recover punitive damages from Defendant Walmart in an amount to be determined by the enlightened conscience of an impartial jury.

## XV.    Punitive Damages - Yumo

177.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every

allegation set forth in the preceding paragraphs.

178.

Plaintiffs are entitled to recover punitive damages from Defendant Yumo because the actions of Defendant Yumo and its agents and employees showed willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences. Accordingly, Plaintiffs are entitled to recover punitive damages from Defendant Walmart in an amount to be determined by the enlightened conscience of an impartial jury.

## XVI.    Bad Faith and Stubborn Litigiousness - Walmart

179.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

180.

Defendant Walmart has acted in bad faith, and have been stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense by forcing Plaintiffs to bring a cause of action and incurring legal fees and expenses to retain legal services.

181.

Defendant Walmart's bad faith specifically includes, but is not limited to,

forcing Plaintiffs to file this lawsuit notwithstanding the incontrovertible fact that this incident resulted from Defendant Walmart's defective design, failure to warn, negligence, and breach of warranty.  As a direct result of Defendant Walmart's stubborn litigiousness, Plaintiffs have been forced to incur costs and attorneys' fees in the investigation and preparation of this lawsuit, and the filing and serving of this lawsuit, and will be forced to incur additional costs and attorneys' fees in maintaining this lawsuit.

182.

Plaintiffs are entitled to recover attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 and other statutes and applicable law.

## XVII.    Bad Faith and Stubborn Litigiousness - Yumo

183.

Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

184.

Defendant Yumo has acted in bad faith, and have been stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense by forcing Plaintiffs to bring a cause of action and incurring legal fees and expenses to retain legal services.

185.

Defendant Yumo's bad faith specifically includes, but is not limited to, forcing Plaintiffs to file this lawsuit notwithstanding the incontrovertible fact that this incident resulted from Defendant Yumo's defective design, failure to warn, negligence, and breach of warranty. As a direct result of Defendant Yumo's stubborn litigiousness, Plaintiffs have been forced to incur costs and attorneys' fees in the investigation and preparation of this lawsuit, and the filing and serving of this lawsuit, and will be forced to incur additional costs and attorneys' fees in maintaining this lawsuit.

186.

Plaintiffs are entitled to recover attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 and other statutes and applicable law.

## DAMAGES

187.

Plaintiffs state their intention and desire to bring each permissible, proper, and authorized claim for damages under Georgia law, including general, special, compensatory, consequential, economic, punitive and other damages as proven by the evidence at trial. Plaintiffs state their intention to seek all damages permissible

63

under Georgia law, including:

    a.  Personal injuries;

    b.  Wrongful death;

    c.  Loss of Society;

    d.  Grief and Sorrow;

    e.  Loss of Normal Life;

    f.  Past, present, and future pain and suffering;

    g.  Disfigurement;

    h.  Infliction of emotional distress because Plaintiffs were in the "zone of danger" witnessing Mr. Poulin's horrific injuries and death and because Plaintiff Deborah Parcell was physically injured;

    i.  Incidental expenses;

    j.  Past, present, and future medical expenses;

    k.  Economic loss;

    l.  Permanent injuries;

    m.  Consequential damages to be proven at trial; and

    n.  Attorneys' fees and costs.

WHEREFORE, Plaintiffs pray that:

    a.  Process be issued as provided by law;

b. Plaintiffs be awarded actual damages in amounts to be shown at trial from Defendants;

c. Plaintiffs have and recover any and all damages allowed by law and as proven by the evidence, including for all past, present, and future medical expenses, pain and suffering, as well as all general, special, compensatory, incidental, economic, punitive and consequential damages from Defendants in an amount to be determined by the enlightened conscience of an impartial jury;

d. Court costs, discretionary costs, and prejudgment interest;

e. Plaintiffs have a trial by jury; and

f. Plaintiffs have such other relief as this Court deems just and proper.

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY**

Respectfully submitted this 7th day of January, 2025.

| BAYUK PRATT, LLC | Geiger Legal Group, LLC |
|---|---|
| */s/ Bradley W. Pratt* <br> Frank T. Bayuk <br> Georgia Bar No. 142596 <br> Bradley W. Pratt <br> Georgia Bar No. 586672 <br> Christopher Lambden <br> Georgia Bar No. 334003 | */s/ A. Casey Geiger* <br> A. Casey Geiger, Esq. <br> Georgia Bar No.: 324547 <br> 157 Reinhardt College Parkway <br> Suite 400 <br> Canton, Georgia 30114 <br> (770) 720-4600 <br> acgeiger@geiger-legal.com |

| 4401 Northside Parkway<br>Suite 390<br>Atlanta, GA 30327<br>(404) 500-2669<br>frank@bayukpratt.com<br>bradley@bayukpratt.com<br>christopher@bayukpratt.com | |